UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
2019 JUL 12 P 12: 59
U.S. DISTRICT COURT
NEW HAVEN, CT.

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>$595,754.27 IN ACCOUNT NUMBER XXXXXXXX4084 SEIZED FROM CITIBANK HELD IN THE POSSESSION OF THE VERNON POLICE DEPARTMENT,<br><br>    *Defendant*. | Misc. Civil No.<br><br>3:19mc 88(HBF) |

## AFFIDAVIT AND APPLICATION FOR SEIZURE WARRANT

I, Christopher Evans, being duly sworn, do herby depose and state:

1. I am a Special Agent employed by the Department of Homeland Security (DHS) / Homeland Security Investigations ("HSI") and have been so employed since August 2008. Since January 2015, I have been assigned to the Federal Bureau of Investigation's Joint Terrorism Task Force ("JTTF"). Prior to this assignment, I attended the Federal Law Enforcement Training Center in Glynco, Georgia. Before joining HSI, I served as a Naval Officer in the United States Navy since March 1999. As a Special Agent with HSI, I have been involved in many investigations involving national security, including leading such investigations, applying for and executing search warrants, interviewing victims, interviewing suspects, and conducting arrests. I have gained experience through training in seminars, classes, and everyday work related to conducting these types of investigations. I have also conducted complex financial investigations and the debriefing of informants, cooperating witnesses, and defendants.

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am the case agent on the investigation which is the subject of this affidavit and have personally participated in the investigation concerning the violations of the federal laws listed in this affidavit.

3. As a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents of the Internal Revenue Service ("IRS") and other law enforcement personnel; (3) information provided by witnesses and other sources of information; (4) records and documents obtained during the course of the investigation; and (5) my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part.

4. This affidavit sets forth facts and evidence that are relevant to the requested seizure warrant, but does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter. I am participating in the investigation described herein and have reviewed documents and information, both oral and written, developed in this investigation. I am familiar with the facts and circumstances detailed in this affidavit.

5. This affidavit is being submitted in support of an application for a warrant to seize:

    a. $595,754.27 in account number XXXXXXXXX4084 seized from CitiBank and held in the possession of the Vernon Police Department.

6. I am currently investigating MUHAMMAD RIZWAN CHOTANI ("CHOTANI"), *et al.*, concerning violations of federal law, including (1) wire fraud, in violation of 18 U.S.C. § 1343; and (2) the laundering of the proceeds derived from unlawful activity, including the proceeds of the above-listed wire fraud, in violation of 18 U.S.C. § 1956. The seizure of the above captioned asset is requested because the contents of the defendant account so described was obtained by devising or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343, and is, therefore, subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

7. Numerous schemes were identified during this investigation which involved extortion, email compromise, and an apparent romance scam. In May of 2017, cooperating victim (CV-1) and resident of Connecticut, was targeted by this scheme. CV-1 received an email from "Hassan Omar" (ho40898@gmail.com) stating a payment of ten thousand dollars needed to be received in order to prevent the murder of CV-1. On or about, May 8, 2017, the Vernon Police Department initiated an investigation into the user of email account "ho40898@gmail.com" using an undercover email account ("undercover account"). On or about May 9, 2017, the Vernon Police Department received an email from the "ho40898@gmail.com" account instructing them to deposit ten thousand dollars into CitiBank Account XXXXXXX4084, assigned to Faroog Ghias (hereinafter referred to as the "Ghias Account"). On or about May 19, 2017, the undercover account received an additional email from "Omran Saleh" (omransaleh51@gmail.com) directing the deposit of forty thousand dollars to the Ghias Account in order to avoid being murdered.

8. On or about July 26, 2017, the Vernon Police Department received an affidavit from Connecticut Attorney James Townsend. The affidavit revealed an email compromise during a real estate transaction being handled by the firm. On or about May 9, 2017, a wire transfer authorization was received, purporting to be from a second cooperating victim ("CV-2"), which directed that the funds for the sale of a property be wired to an account in the name of CV-2 and "High Energy Hangout LLC." On or about May 10, 2017, the bank wired $373,975.97 from the firm's client funds account to the account in the name of CV-2 and "High Energy Hangout LLC." to Citibank account XXXXX2018. On or about, May 23, 2017, CV-2 advised Attorney Townsend that he had not received the wire transfer associated with the real estate transaction. Attorney Townsend determined that: (1) the firm's staff member had been communicating with someone pretending to be CV-2 and (2) CV-2 had, at the same time, been communicating with someone pretending to be associated with the firm. Upon review of the XXXXX2018 Citibank account, Citibank revealed the person or persons affiliated with the "High Energy Hangout LLC." bank account transferred the sum of $149,800.00 to the Ghias Account over three separate transactions which occurred on May 11, 2017, May 15, 2017, and May 18, 2017.

9. On or about August 15, 2018, a telephonic interview of CV-3 was conducted. CV-3 was the apparent victim of what is commonly known as a "romance scam," which is a confidence trick involving feigned romantic intentions towards a victim, gaining their affection, and then using that goodwill to manipulate the victim into furthering the fraudulent scheme. Victims are manipulated to deposit such funds into bank accounts under the belief the accounts are for the direct benefit of their romantic partner but which are in fact simply "mule" accounts that are designed as vehicles to move the proceeds of the fraud from multiple victims to ultimately benefit the fraudulent actors.

11. CV-3 created an online profile at OurTime.com, an online dating site designed to match individuals over fifty years old based upon similar profiles and interests. CV-3 was matched to profiles of other users, including an individual identified as "David Parish." "Parish" who purported to be working overseas, informed CV-3 he had lost his wallet and needed money sent.

12. CV-3 was instructed to wire transfer money to the Ghias Account and CV-3 followed Parish's instruction. In April of 2017, CV-3 sent $29,386.00 to the Ghias Account for the benefit of Parish. The source of the funds was CV-3's personal savings.

13. After continued requests for additional funding, CV-3 realized they had been tricked and ceased sending money to "Parish." CV-3 has realized a loss in excess of $100,000.00 and has expressed embarrassment and humiliation as a result of being victimized in this fraudulent scheme.

14. On July 5, 2018, an interview of Ghias was conducted. In September of 2016, Ghias entered into a real estate contract with "CHOTANI" for the sale of a family property located in Pakistan. "CHOTANI" was provided the Ghias Account information in order to wire transfer the agreed upon sale price of approximately $1.15 million dollars. In March of 2017, the Ghias Account began to receive transfers, which Ghias believed to be associated with the sale of the property. Citibank records show from March 20, 2017, through May 24, 2017, approximately twenty-eight transfers into the Ghias Account occurred which totaled approximately $740,967.75. These transfers originated from multiple individuals whom Ghias acknowledged he did not know nor have any business affiliations with. Included in these transfers were those made by CV-2 and CV-3. CV-1 and the Vernon Police Department never transferred monies into the Ghias Account.

15. Based on my training and experience as well as discussions with other law enforcement officers who are investigating this matter, I know that individuals engaged in wire fraud and money laundering activities use funnel accounts to move and layer illicit proceeds for the purpose concealing and disguising the true nature and source of the funds. I also know that the rapid movement of funds though unwitting victims' accounts is a common technique used by criminal organizations to funnel illegal proceeds and avoid detection by law enforcement. I believe the activities outlined above represent an attempt to launder wire fraud proceeds funnel illicit proceeds derived from an internet-based fraud scheme of which multiple victims have been identified.

16. On May 26, 2017, via a state warrant for seizure of funds, the Vernon Police Department seized the Ghias Account. At the time of seizure, the Ghias Account held $767,506.59. The Vernon Police Department returned $171,752.32 to CV-2. This warrant seeks the remaining money the Vernon Police Department seized from the Ghias Account: $595,754.27.

Conclusion

17. Based upon the foregoing, information described above, I submit that probable cause exists to believe $595,754.27 in account number XXXXXXXXX4084 seized from CitiBank and held in the possession of the Vernon Police Department were obtained by devising or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of 18 U.S.C. Section 1343 and are therefore, subject to forfeiture pursuant to 21

U.S.C. Section 981(a)(1)(C). I request that the Court issue a seizure warrant for the defendant account pursuant to 18 U.S.C. 981(b).

_____
CHRISTOPHER EVANS
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed and Sworn to before me this __12__ day of __July__, 2019, at New Haven, Connecticut.

/s/
_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE